**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

————————————————

Nos. 16-1468(L), 16-1469, 16-1474

————————————————

NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al.,

*Plaintiffs-Appellants*,

v.

PATRICK LLOYD MCCRORY, et al.,

*Defendants-Appellees*.

————————————————

LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al.,

*Plaintiffs-Appellants*,

v.

STATE OF NORTH CAROLINA, et al.,

*Defendants-Appellees*.

————————————————

LOUIS M. DUKE, et al.,

*Plaintiff-Intervenors-Appellants*,

v.

STATE OF NORTH CAROLINA, et al.,

*Defendants-Appellees*.

————————————————

On Appeal from the United States District Court
for the Middle District of North Carolina

_____

**APPELLANTS' MOTION FOR STAY OF JUDGMENT
AND INJUNCTION PENDING APPEAL**

_____

Pursuant to Federal Rule of Appellate Procedure 8(a) and Local Rule 8, Plaintiffs/Intervenors-Appellants in *NC NAACP v. McCrory*, No. 16-1468(L), *Duke v. North Carolina*, No. 16-1469, and *League of Women Voters of N.C. v. North Carolina*, No. 16-1464 (hereinafter, collectively, "Plaintiffs") respectfully move this Court to grant a stay of the District Court's April 25, 2016, judgment pending resolution of the consolidated appeals in this matter. Such a stay would keep in place this Court's prior injunction forbidding Defendants from (i) eliminating same-day registration ("SDR") and (ii) refusing to count out-of-precinct ("OOP") provisional ballots. Additionally, Plaintiffs move this Court to enjoin the portion of North Carolina Session Law 2013-381 ("HB589") that reduced the early voting period by a week.

At this time, Plaintiffs are not moving for an injunction of the District Court's decision with respect to the photo ID requirement or the elimination of the State's program allowing for pre-registration of 16- and 17-year-olds. With respect to photo ID, while Plaintiffs believe they have a likelihood of success on the merits on this claim and that voters will be irreparably harmed if the photo ID

1

requirement is in effect in the November 2016 presidential election, Plaintiffs believe that if and when they prevail on the photo ID claim, implementation of the Court's order will be straightforward and simple: the requirement will simply fall away and voters will no longer be asked to show photo ID at the polls in order to vote. The relief the Plaintiffs seek on their Photo ID claim is prohibitory—that the State simply be prohibited from requiring voters to show photo ID. This result can and should be easily obtained as soon as the Court invalidates the photo ID requirement.

With respect to pre-registration, once again, Plaintiffs believe they have a likelihood of success on the merits. Plaintiffs concede, however, consistent with this Court's prior opinion, *see League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224 (4th Cir. 2014) ("*LWVNC*"), that because only citizens eighteen years and older may vote, absent another "foul-up at DMV," J.A. 24650 (Op. 166), the State's refusal to pre-register sixteen- and seventeen-year-olds in advance of the upcoming election likely will not irreparably harm citizens who may vote in the upcoming general election. 769 F.3d. at 236.

## BACKGROUND

On August 12, 2013, NAACP and LWV Plaintiffs filed lawsuits seeking declaratory and injunctive relief from North Carolina Session Law 2013-381 ("HB589"), which altered election administration in North Carolina by, among

other things, shortening the early voting period, eliminating SDR and OOP voting, and imposing a strict photo ID requirement for voters. *NC NAACP v. McCrory*, No. 1:13-cv-658, ECF No. 1 (M.D.N.C.); *LWVNC v. North Carolina*, No. 1:13-cv-660, ECF No. 1 (M.D.N.C.). Plaintiffs alleged that the challenged provisions of HB589 violated the Fourteenth Amendment to the United States Constitution and Section 2 of the Voting Rights Act of 1965. *Id.*

On September 30, 2013, the United States filed its own lawsuit alleging claims similar to the Plaintiffs'. *United States v. North Carolina*, No. 1:13-cv-861, ECF No. 1 (M.D.N.C.). After the cases were consolidated, *see NC NAACP v. McCrory*, No. 1:13-cv-658, ECF No. 39,[1] on January 28, 2014, the District Court granted the intervention of a group of young voters alleging Fourteenth and Twenty-Sixth Amendment claims in *LWVNC*, and raising those claims with respect to the repeal of pre-registration. *LWVNC v. North Carolina*, No. 1:13-cv-660, ECF No. 62.

On May 19, 2014, Plaintiffs moved for a preliminary injunction, asking the District Court to enjoin the elimination of SDR, the repeal of OOP provisional voting, and the elimination of seven "one-stop" voting days, among other aspects of HB589. ECF No. 110 at 2. The District Court denied Plaintiffs' motions. *See*

---

[1] Hereinafter, all docket entry numbers are from the lead case below, *NC NAACP v. McCrory*, No. 1:13-cv-658, except where otherwise noted.

3

*N.C. State Conf. of Branches of the NAACP v. McCrory*, 997 F. Supp. 2d 322 (M.D.N.C. 2014).

Plaintiffs appealed, and this Court reversed with respect to SDR and OOP voting, finding that the elimination of these provisions would cause disproportionate and irreparable harm to North Carolina minority voters and ordering the District Court to enjoin the State from eliminating SDR and OOP voting pending resolution of this action on the merits. *LWVNC*, 769 F.3d at 230, 252-53. This Court did not enjoin the reduction in early voting because the election was imminent and the balance of equities did not warrant the injunction. *Id*. at 236-37.

Defendants filed an Emergency Application for Stay of the Fourth Circuit Mandate with the Supreme Court of the United States on October 2, 2014. Defs.' Emergency Appl. For Recall & Stay of Mandate, No. 14A358 (U.S. Oct. 2, 2014). The Supreme Court granted the stay, pending the filing and disposition of a petition for writ of certiorari. *North Carolina v. League of Women Voters of N.C.,* 135 S. Ct. 6 (2014) (Ginsburg, J., dissenting). Defendants' petition for writ of certiorari was denied on April 6, 2015. *North Carolina v. League of Women Voters of N.C.,* 135 S. Ct. 1735 (2015). This Court then reinstated the District Court's injunction on May 5, 2015, and as a result SDR and OOP voting remained in effect for elections in October 2015, November 2015, and March 2016, and currently

represent the status quo in the state's election law. *See* ECF No. 200. Following a bifurcated trial held July 2015 and January 2016, the District Court entered judgment against all Plaintiffs and dismissed all of their claims on April 25, 2016. *See* ECF Nos. 439, 440. In its Judgment, the District Court ordered that the preliminary injunction against the repeal of SDR and OOP voting remain in place through June 7, 2016, when statewide primary elections are scheduled for U.S. House seats and a state supreme court seat. *See* ECF No. 440. Without a stay from this Court, SDR and OOP voting will be eliminated in North Carolina effective June 8, 2016. *Id.*

## **ARGUMENT**

Under the Federal Rules of Appellate Procedure, a party may move this Court for a stay of a district court's judgment or injunction pending appeal. Fed. R. App. P. 8. A party must ordinarily move first in the district court for the relief sought, but is relieved of the requirement of doing so upon a showing that "moving first in the district court would be impracticable." F.R.A.P. 8(a)(1)-(2). In this case, the expedited nature of this Court's review and the short time before the District Court's judgment goes into effect creates a situation where moving first in the district court, and completing the required briefing below, would likely render unavailable the ability of Plaintiffs to seek relief from this Court before expiration

of the existing stay (which, for two of the challenged provisions, will occur June 7).

"A party seeking a stay must show (1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). "Irreparable harm to the party seeking the stay and harm to the opponent of the stay are the most important factors in the balance." *Id.* (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991)).

## I. Plaintiffs Are Likely to Prevail on the Merits of their Appeal

As detailed in Plaintiffs' opening brief filed last week, Plaintiffs are likely to prevail on their Section 2, Fourteenth Amendment intentional discrimination and undue burden, and Twenty-Sixth Amendment claims because of significant legal errors committed by the court below. Plaintiffs briefly recap those errors here, while incorporating the full merits brief filed May 19.

### a. Section 2 of the Voting Rights Act

Plaintiffs are likely to prevail on the merits of their appeal of the Section 2 ruling because the District Court failed to follow this Court's guidance issued in its 2014 decision reversing the lower court's ruling on Plaintiffs' motion for a

preliminary injunction. *LWV*, 769 F.3d at 240-41. There, this Court articulated a two-pronged test for establishing Section 2 liability—Section 2 is violated if a challenged practice (i) "impose[s] a discriminatory burden," meaning that it "disproportionately impact[s] minority voters"; and (ii) the disproportionate impact is "in part . . . caused by or linked to social and historical conditions that have or currently produce discrimination against members of the protected class." *Id.* at 240, 245. The District Court had not performed that analysis in its 2014 ruling, and it did not apply that clearly articulated standard in its ruling in 2016, either.

Based largely on undisputed facts cited by the District Court itself, Plaintiffs satisfied their burden under both prongs of that analysis, demonstrating that African-American and Latino voters disproportionately used SDR, OOP voting, and eliminated week of early voting. Specifically, the District Court found that "[i]t is indisputable that African American voters disproportionately used SDR," and that "African Americans comprised 35.5% of registrants during the SDR period for the 2008 presidential election and 32.0% of registrants during the SDR during the SDR period for the 2012 presidential election, which exceeded their roughly 22% proportionate share of all registered voters." J.A. 24647 (Op. 163); *see also LWV*, 769 F.3d at 233. There is no dispute that from 2006 to 2012, "African American voters were disproportionately more likely than whites to cast an OOP provisional ballot." J.A. 24662 (Op. 178), 24668 (Op. 184 n.117). And in

2014, when OOP provisional ballots were *not* counted, African Americans cast a disproportionately high number of those discarded ballots. J.A. 24664 (Op. 180).

Likewise, the racially-disparate usage of early voting is beyond dispute. In both the 2008 and 2012 presidential elections, over 70% of African-American voters used early voting, as compared to only approximately 50% of white voters. *N.C. State Conference of NAACP v. McCrory*, 997 F. Supp. 2d 322, 372 n.64 (M.D.N.C. 2014), *rev'd LWV*, 769 F.3d 224.

Additionally, the record in this case indicates that the difficulties African Americans face in voting stem from North Carolina's long and sordid history of racial discrimination, which resulted in persistent disparities that African Americans face in all socioeconomic categories. See J.A. 24723-25 (Op. 239-41). The lower court explicitly found that these disparities "can be linked to the State's disgraceful history of discrimination." J.A. 24727 (Op. 243). Despite all of these facts adduced at trial and largely found by the District Court, that court still failed to reach the obvious conclusion: that the challenged provisions violate Section 2.

Beyond failing to apply this Court's well-articulated legal standard, the District Court also made numerous significant legal errors, detailed in Plaintiffs' opening brief. *See* Appellants' Br. 13-24. Thus, Plaintiffs are likely to succeed on the merits of their Section 2 claims.

   *b.  Intentional Discrimination Prohibited by the Fourteenth Amendment*

Plaintiffs presented substantial evidence that, under the roadmap established for analyzing intentional discrimination claims in *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265-66 (1977), the General Assembly adopted the challenged provisions with unconstitutional discriminatory intent. *See* Appellants' Br. 43-51. When the *Arlington Heights* analysis is properly applied to the facts in the record, any reasonable court must find a violation of the Fourteenth Amendment's prohibition against intentional racial discrimination.

### c. Undue Burden on the Right to Vote Prohibited by the Fourteenth Amendment

Although the Court identified the correct legal standard applicable to claims brought under the *Anderson/Burdick* framework, it nonetheless misapplied the standard throughout its analysis. Evidence in the record demonstrates that the magnitude and character of the burden wrought by each of the challenged provisions is severe, and the cumulative effect of them is devastating. Tens of thousands of eligible North Carolina voters were actually disenfranchised by these loss of these voting mechanisms. *See, e.g.,* J.A. 630-631, 873, 4466, 4554, 3882, 19760-70, 24651-51 (Op. 167-68), 24664 (Op. 180). And when heightened scrutiny is applied to the alleged justifications for the challenged parts of HB589, none of those reasons withstand any testing of the weight or legitimacy.

9

Furthermore, the District Court made several substantial legal errors in its *Anderson/Burdick* analysis. Most importantly, the court failed to properly assess the burden that HB589 imposes on the right to vote. With respect to SDR and OOP voting, it failed to acknowledge the evidence that thousands of voters were disenfranchised in the 2014 general election. J.A. 24651-52 (Op. 167-68); *see also* Appellants' Br. 60-62. Given the severity of these burdens, the District Court's erred in the failure to apply heightened scrutiny to the state's proffered justifications. The court simply applied rational basis review, and accepted at face value the listed reasons for the challenged provisions. *See, e.g.*, J.A. 24918-19 (Op. 434-35). Beyond those two central legal errors, the District Court made a number of additional legal errors, again detailed in Plaintiffs' opening brief. *See* Appellants' Br. 64-65 & n.14.

### d. *Discrimination against Young Voters in Violation of the Twenty-Sixth Amendment*

The Twenty-Sixth Amendment prohibits the denial or abridgement of the right to vote on account of age. The undisputed facts show that the challenged provisions were intended to burden the voting rights of young North Carolinians. *See* J.A. 2314-16, 2320. When compared to other voters, young voters disproportionately used SDR, OOP, and early voting. J.A. 24944 (Op. 460). For all these reasons and more, detailed in Plaintiffs' opening brief at 68-76, the District Court erred on this claim and Plaintiffs are likely to succeed on the merits.

## II.    Plaintiffs Will Suffer Irreparable Injury if the Stay Is Denied

Plaintiffs will be irreparably harmed if SDR and OOP voting are prohibited, and if early voting is limited to ten days, during the 2016 presidential election. The right to vote is one of the most fundamental rights in our democracy and is thus afforded special protections. *See Reynolds*, 377 U.S. at 554-55, 563; *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("Other rights, even the most basic, are illusory if the right to vote is undermined."). As such, any impediment or abridgment of the right to vote—such as the elimination of SDR, OOP, and the first seven days of the early voting period—is an irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also United States v. City of Cambridge*, 799 F.2d 137, 140 (4th Cir. 1986).

Plaintiffs will also suffer irreparable harm if Defendants are permitted to (i) dismantle the eliminated registration and voting practices this summer before the Court has issued its appellate ruling, and then (ii) use their election preparation efforts as grounds to deny or contest implementation of a later order from this Court reinstating the eliminated provisions before the November 2016 election. In other words, if Plaintiffs prevail on their claims regarding SDR, OOP, and early voting—as they expect to do—but Defendants are able to forestall the re-implementation of those provisions for the November 2016 election based on the

State's election preparation efforts during the pendency of this appeal, Plaintiffs will have won a hollow victory.

These concerns are real. As a practical matter, while this Court has expedited review of this appeal, given the size of the record (including an over 25,000-page appendix and twenty-five days of hearing and trial transcripts), this Court still may not have time to rule before preparations have begun for the November 2016 elections. Because some election preparations may begin months before an election, it simply may not be feasible for this Court to rule until preparations have begun in earnest for the November 2016 election—preparations that, if allowed to proceed too far, could potentially result in conducting another election under an illegal voting system.

Just as in 2014, Plaintiffs expect that the State will go about the process of dismantling the systems that enable the efficient operation of the provisions sought to be held in place, particularly SDR, as soon as legally able. *See* Defs.' Emergency Appl. For Recall & Stay of Mandate, No. 14A358, at 25-26 (U.S. Oct. 2, 2014) ("SDR has been administered electronically through an SDR application embedded within a comprehensive computer program. The SDR application was disengaged after the enactment of S.L. 2013-281. As a result, it has not been maintained along with the rest of the computer program, nor has it gone through the normal quality testing needed to ensure it can safely be used with all of the

other applications related to registration, mail verification, and voting.") (internal citations omitted). If the injunction is allowed to expire, the State will likely do the same, and likely argue once again that "it is too late to reliably restore the SDR application in time for the General Election." *Id*. at 26.

Likewise, if county boards proceed with the process of developing early voting plans this summer, including securing the resources necessary to implement those plans, under the assumption that they will only be required to offer a 10-day early voting period, the State is again likely to claim that it is too late to offer relief even if this Court later orders a restoration of the full 17-day early voting period. The State should not be able to insulate the District Court's early voting decision from review this time around simply by initiating efforts to implement a ten-day early voting period and then claiming there is not enough time to rectify the State's own efforts. Given the volume of voters anticipated in the November 2016 general election, *see infra* pages 18-19, the loss of a week of early voting, including the loss of an additional Sunday of voting utilized in Souls to the Polls efforts, will cause congestion and long lines at polling places in the general election, thus harming voters. If the State takes a similar position to the one it took in 2014—that it cannot change early voting plans too late in the election process, including after the counties initially submit their early voting plans for the general election—then this harm would be irreparable absent an injunction from this Court.

13

An injunction pending appeal is also necessary to prevent irreparable harm because there may be another election between June 7 and November 8, 2016, making the entry of a stay even more critical. Individual voters have sued North Carolina for allegedly racially gerrymandering state legislative districts, including mechanically using race to pack black voters into as few districts as possible and at far beyond the concentration necessary to offer them an opportunity to elect their candidates of choice. *Covington v. North Carolina*, No. 1:15-cv-399, ECF No. 1 (M.D.N.C. May 19, 2015) (three-judge court).[2] When the trial in *Covington*—which concerned only state legislative districts—concluded on April 15, 2016, the panel requested briefing from both parties on the timing of implementing a remedy should the court find the challenged districts to be unconstitutional racial gerrymanders. Both sides' briefs contemplated a special election primary for remedied districts in August or September of this year. *Covington*, No. 1:13-cv-399, ECF Nos. 115, 117 (May 6, 2016). Thus, because there is a significant chance that many North Carolina voters will head to the ballot box before the November general election, it is even more necessary for this Court to stay the District Court's judgment until it has ruled.

---

[2] Earlier this year, the State lost a similar challenge to congressional districts, and is conducting a special election for primary races in the remedial districts on June 7, 2016. *Harris v. McCrory*, No. 1:13-cv-949, ECF No. 142 (M.D.N.C.) (three-judge court).

14

Finally, the experience in the March 2016 primary election provides compelling evidence that a substantial number of voters will be irreparably harmed if this Court does not enter the requested stay. In March, the injunction against the elimination of SDR and OOP voting that is currently in place allowed tens of thousands of eligible North Carolina voters to exercise their constitutional right to vote. In that election, 22,855 voters used SDR successfully to register and cast a ballot at an early voting site. App. A, Declaration of Robert H. Hall, ¶ 12. In many counties, those voters were disproportionately African American. *Id*. ¶ 13.

Likewise, thousands of voters in the March primary—over 6,300—had their OOP provisional ballots counted in whole or part because of this Court's injunction. *Id*. ¶ 19. In accordance with the trend in every federal election cycle since OOP voting was first introduced, African Americans disproportionately relied on this avenue of voting, with 35% of all counted OOP votes statewide having been cast by black voters. *Id*. ¶ 20. The continued heavy reliance on SDR and OOP is strong evidence of the irreparable harm that Plaintiffs and all North Carolina voters will face if any election, or the preparation for an election, is allowed to proceed without the eliminated voting and registration mechanisms.[3]

---

[3] The continuing need for SDR to operate as a failsafe in the registration process also warrants a continuation of this Court's injunction. The problems identified by Plaintiffs during the trial in this case with compliance with the National Voter Registration Act ("NVRA") by the North Carolina Department of Motor Vehicles and public assistance agencies have continued. *See, e.g*., J.A. 24923 (Op. 439

Because experiences from the March 2016 primary reinforce Plaintiffs' claims that voters will be irreparably harmed without a stay, and, indeed, reinforce the likelihood of Plaintiffs' success on the merits, this Court should grant the requested relief.

## III.    Other Parties Will Not Be Substantially Harmed by the Stay

As a primary matter, Defendants will not suffer any irreparable injury, or any injury at all, from the implementation of a constitutional voting scheme.  To the contrary, Defendants cannot claim irreparable harm merely because they will have been enjoined from effectuating a statute that governs the time, place and manner of elections.  *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986) ("The power to regulate the time, place and manner of elections does not justify, without more, the abridgment of fundamental rights, such as the right to vote….").

Additionally, as this Court has already held, the State's interest in administrative convenience cannot outweigh the public's interest in the unabridged and unimpeded right to vote.  *LWVNC*, 769 F.3d at 244; *see also Taylor v. Louisiana*, 419 U.S. 522, 535 (1975); *Pashby v. Delia*, 709 F.3d 307, 329 (4th Cir. 2013).  In fact, entry of a stay at this junction would actually alleviate potential

n.236) ("If the DMV failed to successfully register these persons, it would be highly troubling because the NVRA requires North Carolina's DMV to do so."); *see also*, *Action NC v. Strach*, 1:15-cv-1063 (M.D.N.C.) (litigation challenging the state's compliance with the NVRA).

administrative burdens on the State. Rather than the State taking action now to de-implement SDR and OOP systems, and educate poll workers about those changes, the State would just maintain the status quo until this Court has a chance to resolve this appeal. Similarly, the development of early voting plans that provide voting over a 17-day window rather than a 10-day window will be easier now than it would be later in the summer.

Finally, the nature of any harm or burden felt by Defendants here is not such that it outweighs the harm to Plaintiffs and other North Carolinians. *Cf. Dye v. McKeithen*, 856 F. Supp. 303, 306 (W.D. La. 1994) ("Potential injury of an election in which citizens are deprived of their right to vote negates any damage that may be sustained by [the jurisdiction] in the potential delay of elections."). Thus, a balancing of the equities weighs strongly in favor of a stay.

## IV. The Public Interest Will Be Served by Granting the Stay

Because the elimination of OOP voting, SDR, and the reduction of the early-voting period will undoubtedly prevent eligible North Carolina voters from successfully casting their ballots, it would serve the public interest for this Court to stay or enjoin these aspects of the lower court's decision pending a final decision on appeal. There is overwhelming public interest in safeguarding the fundamental right to vote, and "that interest is best served by favoring enfranchisement and ensuring that qualified voters' exercise of their right to vote is successful." *Obama*

*for America v. Husted*, 697 F.3d 423 (6th Cir. 2012) (quoting *Hunter v. Hamilton County Board of Elections,* 635 F.3d 219 (6th Cir. 2012)).

Moreover, the so-called "*Purcell* principle" also supports the entering of the requested stay in the public interest.  In *Purcell v. Gonzalez*, 549 U.S. 1 (2006), the Supreme Court vacated a Ninth Circuit injunction temporarily blocking enforcement of Arizona's strict photo ID requirement.  The Court criticized the Ninth Circuit for entering the injunction so close to the election, raising concerns that the change in election law in close proximity to an election could cause voter confusion and problems in election administration.  *Id*. at 4-5.  This principle seems to have been the guiding motivation behind four orders issued by the Supreme Court in the month before the 2014 election: a stay of this Court's injunction restoring SDR and OOP provisional voting, *North Carolina v. League of Women Voters*, 135 S. Ct. 6 (2014) (mem.); a refusal to vacate the Fifth Circuit's stay of a district court order barring Texas from using its strict photo ID requirement, *Veasey v. Perry*, 135 S. Ct. 9 (2014) (mem.); a stay of a district court's order that early voting days be restored in Ohio, *Husted v. Ohio State Conf. of NAACP*, 135 S. Ct. 42 (2014) (mem.); and a vacatur of a Seventh Circuit stay of a district court's order barring Wisconsin from using its strict photo ID requirement, *Frank v. Walker*, 135 S. Ct. 7 (2014) (mem.).

North Carolina is rapidly approaching a very competitive and high volume election—the November 2016 general election.  In addition to the presidential race, North Carolina also has competitive gubernatorial and U.S. Senate races on the ballot.  *See* Jim Morrill & Craig Jarvis, *NC Governor's Race Could Be Nation's Most Competitive*, CHARLOTTE OBSERVER, Mar. 15, 2016, http://www.charlotteobserver.com/news/politics-government/election/article66261897.html; *see also* Public Policy Polling, "North Carolina Senate Race Remains Close," Apr. 27, 2016, http://www.publicpolicypolling.com/main/2016/04/north-carolina-senate-race-remains-close.html.

During the primary election earlier this year, North Carolina voters enjoyed the protections of SDR and OOP provisional voting, which, as discussed above, enabled nearly 30,000 of them to vote.  *See supra* pages 14-16.  In light of this Court's injunction, SDR and OOP were used in both 2015 municipal elections and the 2016 statewide primary elections.  Voters have relied on their presence.  It is not consistent with the *Purcell* principle to, in a span of a few months, have SDR and OOP offered to voters in the primary election, have it taken away after the dissolution of this Court's injunction on June 8, and then have it restored again after Plaintiffs succeed on the merits, particularly if the State is to conduct a special election in August or September.  Thus, maintaining the status quo with respect

SDR and OOP is consistent with the Supreme Court's preference for consistency in election laws.

Finally, while the desire for consistency in election laws motivates the application of the *Purcell* principle, fidelity to that principle would still compel enjoining the reduction in early voting. As demonstrated above, Plaintiffs are likely to succeed on the merits of their contention that this provision of S.L. 2013-281 is illegal and unconstitutional. Given that, the appropriate question is whether the *Purcell* principle would be better served by enjoining that reduction now or later this summer, after a final ruling on the merits? Counties will start this summer to make their plans for early voting that starts in October, with the 2016 general election early voting plans currently due to the State Board of Elections on July 29, 2016. North Carolina State Board of Elections Numbered Memo 2016-07, https://s3.amazonaws.com/dl.ncsbe.gov/sboe/numbermemo/2016/Numbered_Memo_2016-07.pdf. To minimize election administration burdens, and to maximize the time available to secure sites and resources for an extended early voting period, the *Purcell* principle would counsel in favor of enjoining the early voting period reduction now.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully move this Court to grant a stay of judgment pending this Court's ruling in these consolidated actions, thus

continuing this Court's injunction with respect to the SDR and OOP voting provisions, further move this Court to enjoin the reduction early voting, and award such other and further relief as this Court may deem appropriate.

Respectfully submitted this 25th day of May, 2016.

By:    */s/ Allison J. Riggs*

_____

| | |
|---|---|
| Laughlin McDonald | Anita S. Earls |
| ACLU Voting Rights Project | Allison J. Riggs |
| 2700 International Tower | George E. Eppsteiner |
| 229 Peachtree Street, NE | Southern Coalition for Social Justice |
| Atlanta, GA 30303 | 1415 Highway 54, Suite 101 |
| Telephone: 404-500-1235 | Durham, NC 27707 |
| Email: lmcdonald@aclu.org | Telephone: 919-323-3380, ext. 115 |
| | Facsimile: 919-323-3942 |
| Christopher Brook | Email: anita@southerncoalition.org |
| ACLU of North Carolina | |
| Legal Foundation | Dale Ho |
| P.O. Box 28004 | Julie A. Ebenstein |
| Raleigh, NC 27611-8004 | Sophia Lin Lakin |
| Telephone: 919-834-3466 | ACLU Voting Rights Project |
| Facsimile: 866-511-1344 | 125 Broad Street |
| Email: cbrook@acluofnc.org | New York, NY 10004 |
| | Telephone: 212-549-2693 |
| | Email: dale.ho@aclu.org |

Counsel for Appellants League of Women Voters of N.C. et al. in No. 16-1474, *League of Women Voters of N.C. v. North Carolina*

| | |
|---|---|
| Penda D. Hair | Daniel T. Donovan |
| 1401 New York Avenue, NW | Bridget K. O'Connor |
| Suite 1225 | K. Winn Allen |
| Washington, DC 20005 | Michael A. Glick |
| Telephone: (202) 463-7877 | Ronald K. Anguas, Jr. |
| Email: phair@forwardjustice.org | Madelyn A. Morris |
| | KIRKLAND & ELLIS, LLP |

Irving Joyner
P.O. Box 374
Cary, NC 27512
Telephone: (919) 319-8353

Adam Stein
TIN FULTON WALKER & OWEN, PLLC
1526 E. Franklin St., Ste. 102
Chapel Hill, NC 27514
Telephone: (919) 240-7089

655 Fifteenth St., N.W.
Washington, DC 20005
Telephone: (202) 879-5000
Email: ddonovan@kirkland.com

Counsel for Appellants NC NAACP et al. in No. 16-1468, *N.C. State Conference of the NAACP v. McCrory*

Edwin M. Speas
John O'Hale
Caroline P. Mackie
POYNER SPRUILL LLP
301 Fayetteville Street
Suite 1900
Raleigh, N.C. 27601
Phone: (919) 783-6400

Joshua L. Kaul
PERKINS COIE LLP
1 E. Main Street, Suite 201
Madison, WI 53703
Phone: (608) 663-7460

Marc E. Elias
Bruce V. Spiva
Elisabeth C. Frost
Amanda Callais
PERKINS COIE LLP
700 13th Street, N.W., Suite 600
Washington, D.C. 20005
Phone: (202) 654-6200

Abha Khanna
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101
Phone: (206) 359-8000

Counsel for Intervenors/Plaintiffs-Appellants Louis Duke et al. in No. 16-1469, *Duke v. North Carolina*

## STATEMENT PURSUANT TO FOURTH CIRCUIT LOCAL RULE 27(a)

On May 24, 2016, counsel for Plaintiffs notified counsel for all other parties in these consolidated appeals of the intended filing of this Motion on behalf of Plaintiffs. Appellees have indicated that they oppose this Motion and will file a response in opposition. Additionally, counsel for the United States have indicated that they do not oppose this Motion, and are likely to submit a response in support.

This the 25th day of May, 2016.

By:    */s/ Allison J. Riggs*

_____

Allison J. Riggs

*Counsel for Appellants League of Women Voters of North Carolina, et al.*

## CERTIFICATE OF SERVICE

This is to certify that the undersigned has on this day electronically filed the foregoing **Appellants' Motion for Stay of Judgment and Injunction Pending Appeal** with the Clerk of Court in case numbers 16-1468(L), 16-1469, 16-1474 using the CM/ECF system, which on the same date sent notification of the filing to all counsel of record.

This the 25th day of May, 2016.

By:     */s/ Allison J. Riggs*

_____

Allison J. Riggs

*Counsel for Appellants League of
Women Voters of North Carolina, et al.*